* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On June 17, 1996, the date of the admittedly compensable injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. On this date plaintiff was using a grinder when the pad separated causing the grinder to catch causing it to erratically jerk resulting in injuries to plaintiff's neck, left shoulder and left elbow.
2. On said occasion, the employee-employer relationship existed between the plaintiff and the employer. On said occasion, the employer was insured by Kemper Insurance Companies.
3. On May 16, 1997, plaintiff was diagnosed with chronic recurrent post traumatic lateral epidcondylitis of the left elbow for which he underwent surgical debridement of the left epicondyle by Dr. James Thompson.
4. On April 15, 1999, plaintiff was seen by Dr. E. Brown Crosby for a second opinion regarding pain he was experiencing in both of his arms. Dr. Crosby diagnosed plaintiff with bilateral epicondylitis and recommended MRI evaluation which was performed on May 7, 1999 and reported as normal.
5. On September 16, 1999, Dr. Crosby declared plaintiff had reached MMI and no future surgery was anticipated. Dr. Crosby assigned a 15% PPD rating to plaintiff's left arm and 10% PPD to his right arm.
6. Defendants accepted this claim as compensable by filing an IC Form 21 dated November 23, 1999 reporting plaintiff's average weekly wage was $789.32 which results in a compensation rate of $492.00. Said form was approved by the Industrial Commission 10-13-00 and was for payment of plaintiff's permanent disability of 10% to his right arm and 15% to his left arm.
7. Defendants printed plaintiff's check in the amount of $23,520.00, net after attorney fees, on November 6, 2000. Plaintiff received such check on November 15, 2000.
8. Plaintiff filed a Petition to Reopen pursuant to N.C. Gen. Stat. § 97-47 on November 13, 2002, which receipt was acknowledge by the Industrial Commission.
9. The parties stipulate into evidence as Stipulated Exhibit # 1, Pre-Trial Agreement.
10. The parties stipulate into evidence as Stipulated Exhibit # 2, medical records.
11. The parties stipulate into evidence as Stipulated Exhibit # 3, I.C. Forms.
 * * * * * * * * * * * RULINGS ON EVIDENTIARY MATTERS
The objections contained in Depositions of Dr. E. Brown Crosby and Dr. Kristin Gowin are ruled upon in accordance with the applicable rule of law and the Opinion and Award in this case.
 * * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner plaintiff was 56 years old and had been employed by defendant/employer for approximately 21 years primarily as a welder earning an average weekly wage of $827.91 yielding a compensation rate of $492.00.
2. On June 17, 1996 plaintiff sustained an admittedly compensable injury by accident when he was operating a metal grinder which had a new grindpad and during the grinding process the pad separated causing the grinder to catch and jerk erratically causing plaintiff to sustain injuries to his neck, right shoulder, left shoulder, and elbow.
3. Plaintiff was evaluated and treated by Dr. E. Brown Crosby on July 10, 1996, with complaints of pain in his right shoulder, left elbow and neck. After physical examination he was diagnosed with a strain to his left elbow, right shoulder and cervical strain. He thereafter continued to work and underwent physical therapy with initial improvement but with a return of his left arm and neck pain. He was thereafter referred to Dr. Ralph Loomis for a neurosurgical evaluation.
4. Dr. Loomis reported plaintiff suffered from right shoulder, right paracervical and arm pain with occasional left elbow pain and left proximal arm pain. Based on his examination and an MRI scan Dr. Loomis diagnosed a cervical strain and recommended conservative treatment.
5. Thereafter, plaintiff came under the care of Dr. James Thompson of the Carolina Hand Surgery Associates who diagnosed and treated him for recurrent post traumatic epicondylitis of the left elbow and subacromical impingement of the right shoulder. Dr. Thompson performed surgery on plaintiff's left elbow on January 21, 1998.
6. Plaintiff was out of work for approximately one week and then returned to work to light duty wearing a cast and sling for 10-12 weeks. Due to the restricted use of his left arm plaintiff used his right arm more extensively.
7. In April 1998, plaintiff returned to his welding job four hours per day. Due to the limited use of his left arm he developed increasing right shoulder pain and right elbow pain and returned to see Dr. Thompson who discontinued plaintiff's welding job.
8. Plaintiff sustained a crush injury to his left middle and ring fingers in July 1998 for which he underwent surgery by Dr. Thompson, was required to wear a splint at work for a period of time which effected his work abilities and for which he received and was paid for permanent partial impairment ratings of 2% to each finger in February, 1999.
9. On April 15, 1999, plaintiff returned to Dr. Crosby with increased complaints of pain in his left arm which had now radiated up his arm from the surgically corrected elbow into his biceps and tricep area. He also complained of pain in the same areas on his right arm and into his right elbow. Dr. Crosby diagnosed bilateral epicondylitis with continued intractable pain in both upper extremities and recommended physical therapy.
10. On May 10, 1999, upon obtaining MRI scans of which were interpreted as normal, Dr. Crosby diagnosed fibromyalgia and referred plaintiff to Dr. Kristin Gowin for a rheumatological evaluation. Defendants denied treatment for plaintiff's fibromyalgia.
11. Dr. Gowin evaluated plaintiff on July 6, 1999 and diagnosed him suffering with fibromyalgia for which she prescribed anti-inflammatory medications and continued to follow his treatment while plaintiff continued to work.
12. On September 20, 1999, Dr. Crosby submitted a Form 25R reporting plaintiff sustained permanent partial impairment ratings of 15% to the left arm and 10% to the right arm. Defendants accepted these ratings and the parties entered into a Form 21 Agreement for Compensation on November 23, 1999, which was not approved by the Commission until October 13, 2000.
13. Defendants printed the check for payment of the impairment ratings in the amount of $23,520.00 on November 6, 2000, and such check was received by plaintiff on November 15, 2000.
14. Following payment of his impairment rating plaintiff was able to continue to work at a tolerable pain level. He continued to follow up with Dr. Gowin who on January 17, 2001 noted plaintiff had been off work for several weeks and had significant improvement in his condition. Upon returning to work she reported an immediate return of his left side, neck, shoulder and arm pain. She added additional medications and cautioned plaintiff about use of these before going to work.
15. On March 6, 2001, plaintiff returned to Dr. Crosby with renewed complaints of his bilateral arm and neck pain. His problems required him to adjust his welding duties due to extreme pain and numbness in his right hand. Dr. Crosby provided a note for modified duty work specifically indicating "no welding" until a neurological evaluation could be performed. Plaintiff attempted light duty work but experienced increased pain and on March 13, 2001, Dr. Crosby removed plaintiff from all work until May 1, 2001.
16. Dr. Crosby reported the nerve conduction studies performed on May 1, 2001 as essentially normal. He indicated plaintiff's primary problems were from his fibromyalgia and recommended he continue pain management. Thereafter plaintiff was able to continue to work at a tolerable pain level.
17. In August 2001, due to staff cutbacks the defendant-employer required plaintiff to move back to assembly line work which required significantly more manual labor and which plaintiff was willing to perform.
18. Plaintiff returned to Dr. Crosby on September 1, 2001 with continued complaints of bilateral upper extremity problems which Dr. Crosby testified in his opinion "were still related back to the original injury and subsequent surgery." Dr. Crosby provided a work note indicating in his opinion plaintiff was incapable of performing the assembly line position due to increasing pain and decreasing functional abilities. In the opinion of Dr. Crosby, plaintiff's physical condition due to his original injury would not permit him to perform assembly line work indefinitely.
19. On November 18, 2001, Dr. Crosby again expressed his opinion that plaintiff "will be unable to tolerate assembly line work on a permanent basis" and "will not be able to continue on with employment on a permanent basis based on the status of your upper extremities, i.e. your hand and arm problems." According to Dr. Crosby, plaintiff's symptoms related back to his original injury of July 1996 and the fact that such symptoms "were worsening to the point the patient was unable to function."
20. According to Dr. Gowin, plaintiff had been treated for fibromyalgia as early as 1985, however he was able to continue to work without treatment. She noted his symptoms deteriorated in May 2001 when he was switched to a job which required more upper arm movements and "he had actually gotten worse at that point." While she acknowledged the fibromyalgia was pre-existing in her opinion "you can say that his current flare of fibromyalgia was due to the 1996 injury." She added "I think that the injury in 1996 tipped him over to where he was in a chronic state of pain with the fibromyalgia" and the injury of 1996 was the cause of his disability.
21. In Dr. Gowin's opinion as a result of the chronic exacerbation of plaintiff's fibromyalgia she "determined him to be permanently disabled" as of October 2001. While she testified she would have permitted him to attempt to work after this date, as of her evaluation of January 2002 in her opinion she "didn't think at that point that he was going to be able to work."
22. The defendant-employer was not able to provide suitable work within plaintiff's limitations which resulted from the deterioration of his compensable bilateral arm injury, chronic pain and fibromyalgia. His employment was terminated on December 16, 2001.
23. Plaintiff's compensable bilateral arm pain and his underlying fibromyalgia were materially aggravated by his required work duties such that his physical and functional condition materially changed by May 2001 which resulted in his loss of suitable employment in December 2001.
24. Plaintiff timely filed a petition to re-open pursuant to N.C. Gen. Stat. § 97-47 on November 13, 2002 on the basis his condition from his compensable injury had changed which entitled him to additional benefits.
25. Plaintiff received severance pay in the amount of his full salary from January 2002 through January 2003. He then received half of his pay from January 2003 through April 2003.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSTIONS OF LAW
1. As of May 2001 plaintiff sustained a change of condition causally related to the compensable injuries sustained on June 20, 1996, and as a result of his change of condition, he has been totally disabled since December 16, 2001 for which he is entitled to compensation at a rate of $492.00 per week until further Order of the Commission. Defendants are not entitled to a credit for severance pay to plaintiff from January 2002 through April 2003. N.C. Gen. Stat. § 97-47.
2. Defendants are responsible for all medical expenses incurred or to be incurred by plaintiff for treatment which is reasonably necessary to effect a cure, give relief or lessen his disability due to his change of condition of his bilateral arm, and neck. N.C. Gen. Stat. § 97-25.
3. Since plaintiff's pre-existing fibromyalgia was materially aggravated by his compensable injury, surgical repair and modified work duties which is causally related to his compensable injury and significantly contributes to his disability, defendants are responsible for all medical expenses incurred or to be incurred for treatment of his fibromyalgia which is reasonably necessary to effect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25.
 * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to counsel fee hereinafter approved, defendants shall pay to plaintiff compensation at the rate of $492.00 per week beginning on December 16, 2001 and continuing until further Order of the Commission. As much of said compensation as had accrued shall be paid in a lump sum without commutation.
2. A reasonable attorney fee in the amount of 25% of the compensation awarded herein is hereby approved for plaintiff's counsel. Said fees shall be deducted from the accrued benefits and from the benefits which are hereafter accrued and shall be paid directly to his attorney.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff for treatment which effect a cure, give relief or lessen his disability due to his change of condition or aggravation of his fibromyalgia.
4. Defendants shall pay the cost of this matter.
This the 22nd day of November 2005.
 S/_________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_________________ LAURA K. MAVRETIC COMMISSIONER
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER